IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KEVIN BALSLY,                                   )
                                                )
    Plaintiff,                          )
                                                )
v.                                              )          Case No. 3:11cv642-DJN
                                                )
WEST MICHIGAN DEBT COLLECTIONS,                 )
INC., et al.,                                   )
                                                )
    Defendants.                         )
_____)

## MEMORANDUM OPINION

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. §

636(c)(1) on the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, in the

Alternative, Motion to Dismiss or Stay on Abstention Grounds (ECF No. 4) and Motion to Stay

on Abstention Grounds (ECF No. 8).[1]  The matter has been thoroughly addressed by the parties'

submissions and the Court has dispensed with oral argument, because it will not materially aid in

the decisional process.  For the reasons stated herein, the Court shall GRANT, in part, and

DENY, in part, the Defendants' Motion to Dismiss (ECF No. 4) such that Defendants Steven

Bratschie and Michelle Born-Fischer are DISMISSED without prejudice.  The Court shall

DENY the Motion to Dismiss in all other respects, and shall DENY the Motion to Stay (ECF No.

8) entirely.

---

[1] Functionally, the alternative relief sought by the Defendants' Motion to Dismiss is the
same as that sought by the subsequently filed Motion to Stay.  Accordingly, the Court addresses
such relief together under the heading "Abstention," *infra* at Section III.

## I. BACKGROUND[2]

In 2000, Plaintiff Kevin Balsly ("Balsly" or the "Plaintiff") purchased a piece of jewelry from a retail location in Newport News, Virginia, financing the purchase with a credit card. (Compl. ¶ 8.) At some time thereafter, the resulting debt was acquired by West Michigan Debt Collections, Inc. ("WMDC"). (*Id.*) Balsly made regular payments on the credit card account through at least October 2004, and possibly as recently as 2006. (*Id.* ¶ 9; Aff. of Mark Limric ("Limric Aff.") at ¶ 4, ECF No. 5-6.)

In October 2010, WMDC retained the law firm of Steven E. Bratschie & Associates, P.C. (the "Law Firm"), including attorneys Stephen Bratschie ("Bratschie") and Michelle Born-Fischer ("Born-Fischer" or collectively with WMDC, the Law Firm, and Bratschie, the "Defendants"). (*Id.* ¶¶ 10-11.) Through the Law Firm, WMDC initiated an action in Michigan state court to collect Balsly's debt on October 1, 2010. (*Id.*; Def.'s Mem. in Sup. Mot. to Dismiss for Lack of Personal Jurisdiction ("Def.'s Mem.") Ex. D.) Employing a series of internet-based searches, the Law Firm ultimately determined that Balsly lived in Virginia, where it then retained a private process server to serve him with the Michigan lawsuit. (Def.'s Mem. at 2, Ex. A.)[3]

Balsly did not timely appear to defend the Michigan lawsuit, so WMDC secured a default judgment against him in April 2011. (Compl. at ¶ 13; Def.'s Mem. Exs. D, E.) In June 2011, WMDC retained an attorney in Virginia to domesticate the Michigan judgment and begin

---

[2] The facts recited herein are based on the Court's review of the pleadings, legal memoranda, and supporting documentation, with all reasonable inferences drawn in favor of the Plaintiff, as required. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

[3] In their Brief, the Defendants allege that Balsly lived in Michigan at some point during the last sixteen years. (Def.'s Mem. at 2-3.) While this fact may have bearing on the merits of the case, it does not affect whether the Defendants are subject to personal jurisdiction in Virginia.

garnishment of Balsly's wages.[4]  (Def.'s Mem. Ex. E.)  Balsly moved for the Virginia court to set aside the default judgment and quash the garnishment, but lost these motions.  (*Id.* Ex. C.) He then retained an attorney in Michigan to challenge the judgment.  Although the Michigan court denied Balsly's motions to dismiss on personal jurisdiction and statute of limitation grounds, it granted his motion to set aside default.  (*Id.* at 3.)  The merits of the collection action, including the limitations issue, remain pending in Michigan.

WMDC is a Michigan corporation that does not regularly conduct business in Virginia. (Aff. of Steven E. Bratschie ("Bratschie Aff.") at ¶¶ 7-8, ECF No. 5-7.)  The Law Firm is incorporated under the laws of Michigan, is located in Kentwood, Michigan, and has never practiced law in Virginia.  (*Id.* at ¶¶ 4-5.)  Also, neither attorney defendant in this case has practiced law in Virginia.  (*Id.* at ¶ 3; Aff. of Michelle Born-Fischer ("Born-Fischer Aff.") at ¶ 3, ECF No. 5-8.)  The parties have not identified any other contacts between the Defendants and Virginia except for those set forth herein; therefore, the Court assumes that no other contacts exist for purposes of resolving the pending motions.

Balsly initiated this action against the Defendants pursuant to the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C §§ 1692 — 1692p.  Specifically, he alleges that the Defendants violated the Act by: (1) bringing an action against Balsly in a venue where he neither resided nor opened the subject line of credit; and (2) attempting to collect a debt barred

---

[4] "Domestication" refers to the procedure whereby a Virginia state court officially enters a foreign judgment on its docket and thereafter enforces the judgment as though it were obtained in Virginia.  "Full faith and credit" demands that Virginia courts recognize a sister-state's judgments.  U.S. Const. art. IV, § 8.  *See also Baker v. GMC*, 522 U.S. 222, 232 (1998). Virginia's courts are constitutionally bound to enforce the foreign judgment, which is accomplished through the "domestication" procedure.  *Baker*, 522 U.S. at 232; *see also Washington v. Anderson*, 373 S.E.2d 712, 714 (Va. 1988).

by the statute of limitations.[5]  (Compl. ¶¶ 11, 14.)  The Defendants now move for dismissal, arguing that the Court lacks personal jurisdiction over them.  Alternatively, the Defendants seek dismissal or a discretionary stay on abstention grounds.

## II. PERSONAL JURISDICTION

### A.      Standard of Review

A motion made pursuant to Fed. R. Civ. P. 12(b)(2) challenges the court's exercise of personal jurisdiction over a defendant.  "When a court's personal jurisdiction is properly challenged . . . the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) (citations omitted).  If the existence of jurisdiction turns on disputed questions of fact, the court may resolve the jurisdictional challenge on the basis of a separate evidentiary hearing or at trial.  *Combs*, 886 F.2d at 676. When, as here, the court is asked to decide personal jurisdiction without an evidentiary hearing, it may do so based solely on the motion papers, supporting legal memoranda, and the relevant allegations of the complaint.  *Id.*  If the court proceeds in this fashion, "the plaintiff need prove only a *prima facie* case of personal jurisdiction," with the court drawing "all reasonable inferences arising from the proof, and resolv[ing] all factual disputes, in the plaintiff's favor." *Id.* (ciations omitted).

### B.      Discussion

To determine whether personal jurisdiction exists, a court typically engages in a two-step inquiry.  *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).  First, it must determine whether the state's long-arm statute authorizes

---

[5] As the Court shall explain, *infra* at n.13, Balsly has withdrawn the statute of limitations claim without prejudice.

the exercise of personal jurisdiction. *Id.* Second, it must assess whether such exercise of jurisdiction is constitutionally permissible. *Id.* However, the Fourth Circuit has determined that "Virginia's long-arm statute [Va. Code § 8.01-328.1] extends personal jurisdiction to the extent permitted by the Due Process Clause." *Young v. New Haven Advocate,* 315 F.3d 256, 261 (4th Cir. 2002) (citation omitted). Thus, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Id.* (citations and internal quotation marks omitted).[6]

Non-resident defendants may be subject to either specific or general jurisdiction. Specific jurisdiction exists if the plaintiff's claims arise out of the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-15 n.8, n.9 (1984). Alternatively, general jurisdiction depends on a defendant's contacts with the forum state unrelated to the claims at issue. *Id.* To establish general jurisdiction, a non-resident defendant's activities in the state must be "continuous and systematic," a "significantly higher" threshold of minimum contacts than is required to establish specific jurisdiction. *ESAB Group v. Centricut, Inc.,* 126 F.3d 617, 623 (4th Cir. 1997). In this case, the Plaintiff does not argue that general jurisdiction exists, so the Court will limit its inquiry to the issue of specific jurisdiction.

---

[6] Although some courts have mentioned in *dicta* that due process could be satisfied without simultaneously satisfying Virginia's long-arm statute, the Fourth Circuit has ruled conclusively that Virginia's "statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 277 (4th Cir. 2009). Compare *Human Res. Certification Inst. v. Human Res. P.A.,* No. 11-1205, 2011 U.S. App. LEXIS 22920, at *2 (4th Cir. Nov. 16, 2011) (citation omitted) *and CFA Inst. v. Inst. of Chartered Fin. Analysts of India,* 551 F.3d 285, 293 (4th Cir. 2009) *with Flexible Benefits Council v. Feltman,* No. 1:08cv371, 2008 U.S. Dist. LEXIS 46626, at *10 (E.D. Va. June 16, 2008) (citing *Verizon Online Servs., Inc. v. Ralsky,* 203 F. Supp. 2d 601, 609-10 (E.D. Va. 2002); *DeSantis v. Hafner Creations, Inc.,* 949 F. Supp. 419, 423 (E.D. Va. 1996)). The Fourth Circuit reaches this result, because Virginia courts have broadly interpreted the phrase "transacting any business" to mean "some purposeful activity" such that due process is satisfied. *John G. Kolbe, Inc. v. Chromodern Chair Co.,* 180 S.E.2d 664, 667 (Va. 1971) (citations omitted); *see also Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.,* 512 S.E.2d 560, 562 (Va. 1999) (citations omitted).

To evaluate whether "minimum contacts" exist such that the exercise of specific jurisdiction comports with due process, a court must consider: (1) whether the defendant "purposefully availed" itself of the privilege of conducting activities in Virginia; (2) whether the plaintiff's claims arise out of such activities; and, (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004). No bright-line numeric test exists, as the Fourth Circuit has held that "a single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon [Virginia] courts." *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990) (internal quotes omitted) (alteration in original).

In fact, a defendant need not be physically present in Virginia to engage in a transaction of business in the Commonwealth. *See, e.g., Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982). Nevertheless, "[a] defendant should be able to anticipate being sued in a court that can exercise personal jurisdiction over him; thus, to justify such an exercise of jurisdiction, a defendant's actions must have been 'directed at the forum state in more than a random, fortuitous, or attenuated way.'" *Mitrano*, 377 F.3d at 407 (quoting *ESAB Group, Inc.*, 126 F.3d at 625).

1.   **WMDC**

Contrary to the Defendants' argument, Balsly does not plead jurisdiction in Virginia based on WMDC's act of filing a lawsuit in Michigan. (Def.'s Reply Mem. in Sup. Mot. to Dismiss ("Def.'s Reply") at 2.) Rather, Balsly argues that WMDC committed a tortious injury in Virginia when it injured a Virginia resident vis-à-vis a FDCPA violation. (Pl.'s Mem. Opp'n Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 8.) According to this argument, WMDC injured Balsly when it filed a claim against him in a venue where he does not live in violation of 15 U.S.C. §

6

1692i(a)(2)(B). But the extent of WMDC's contacts with Virginia goes further. In attempting to collect the subject debt, WMDC served process on Balsly in Virginia, domesticated the Michigan judgment in Virginia, and garnished Balsly's wages in Virginia. Moreover, the subject debt appears to have originated in Virginia, placing WMDC in the position of successor in interest of a contract formed in Virginia.

From the outset of its transaction with Balsly, WMDC was "transacting business" in Virginia, because it had accepted the assignment of a contract formed in Virginia.[7] Under Virginia law, a party who assumes the rights of a contract from a predecessor generally assumes the legal position of its predecessor. *States Roofing Corp. v. Bush Constr. Corp.*, 426 S.E.2d 124, 127 (Va. 1993) ("When a party assumes the contract, or undertaking, of another he makes it his contract") (quoting *Economic Water Heating Corp. v. Dillon Supply Co.*, 159 S.E. 78, 81 (Va. 1931)).[8] Here, WMDC accepted the assignment of a contract that was formed in Virginia and, therefore, stands in the shoes of the contracting creditor.

---

[7] Defendants may ultimately dispute this fact at trial to the extent that it has any bearing on the merits of Balsly's claim. But to determine whether personal jurisdiction exists, the Court must evaluate the evidence before it. Such evidence includes the Balsly Affidavit, which asserts that he entered into the subject credit agreement at a jewelry store in Newport News, Virginia. (Aff. of Kevin Balsly ("Balsly Aff.") at ¶ 13, ECF No. 5-4.) As it is required to do, the Court weighs the jurisdictional evidence, drawing all reasonable inferences in Balsly's favor, thus crediting his affidavit on this point. *Combs*, 886 F.2d at 676. Significantly, the Defendants admit that they do not possess the original contract documents. (Limric Aff. at ¶4.) On the other hand, the only evidence offered to assert that the contract was formed in Michigan is a reference to an "Inquiry/Summary" described in a pleading filed in the Michigan court — a document that has not been filed in this case. (Def.'s Mem. Ex. E at 7, ECF No. 9-5.)

[8] If Balsly entered into the credit agreement in Virginia, then Virginia contract law applies to that relationship unless a choice of law provision was agreed upon. *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 327 (Va. 2006) (citations omitted) ("[T]he law where the contract was formed applies when interpreting the contract and determining its nature and validity"); *Settlement Funding, LLC v. Neumann-Lillie*, 645 S.E.2d 436, 438 (Va. 2007) (citations omitted) ("If a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied"). Here, the Defendants admittedly cannot produce the written contract, so no choice of

7

Also, WMDC's invocation of Virginia legal proceedings constitutes further contact related to Balsly's claim. WMDC intentionally sought the protection of Virginia's judicial system when it domesticated the Michigan judgment in the Virginia courts. Although Virginia's courts are bound to honor the judgment, WMDC and the Law Firm *chose* to pursue domestication — they were not required to do so. Thus, it cannot be said that WMDC's efforts to domesticate and enforce the Michigan judgment were fortuitous or accidental. The same is true of the subsequent garnishment proceedings in Virginia state courts. The touchstone of the "purposeful availment" analysis is intentional conduct "directed at the forum state." *Mitrano*, 377 F.3d at 407 (citation omitted). Because WMDC's use of Virginia court procedures was *intentional*, it "purposefully availed" itself of the protections afforded in Virginia's courts. *Id.* (emphasis added). They cannot have it both ways — intentionally enjoying the protection of Virginia's courts while simultaneously denying that they are subject to jurisdiction here. Thus, WMDC meets the first prong of the personal jurisdiction analysis.[9]

The second prong of the "minimum contacts" calculus is more easily satisfied. Each of the contacts "aris[es] out of" or "relat[es] to" Balsly's alleged claim. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). Assuming a contractual obligation formed in Virginia certainly constitutes a contact "arising out of" the formation of the agreement. And without the

law provision can be said to exist. Although the parties have not briefed the choice of law issue, the Court has concluded, for jurisdictional purposes only, that the contract was formed in Virginia. Thus, principles of Virginia law guide the Court in determining the effect of the assignment of the contract on WMDC's contacts with Virginia. Regardless, the law of assignment is generally the same in Michigan. *Lutz v. Dutmer*, 282 N.W. 431, 437 (Mich. 1938) ("Upon assignment by the purchaser, the assignee steps into the shoes of the purchaser").

[9] WMDC argues that its "connections with Virginia are too attenuated to permit the exercise of personal jurisdiction when compared with the totality of Defendants' actions outside of Virginia." (Def.'s Reply at 4.) Any contacts existing with other states, such as Michigan, have no bearing on whether the contacts with Virginia are sufficient. *See, e.g., Illinois v. Hemi Group, LLC*, 622 F.3d 754, 758 (7th Cir. 2010) ("[Defendant's] contacts, or lack of contacts, with any other state has no bearing on whether it is subject to personal jurisdiction in Illinois").

subsequent enforcement measures undertaken in Virginia's courts, Balsly never would have been injured, or even learned of, WMDC's alleged tortious conduct. Indeed, those enforcement efforts will be relevant to the merits of the case, because they may impact the asserted defense under the "*bona fide* error doctrine," as it demonstrates whether the Defendants' acted "without malice or *intent to injure* Plaintiff." (Answer at ¶ 40.) Thus, there exists a sufficient relationship between the claim and the contacts to satisfy the second prong with respect to WMDC.

### 2.   The Law Firm

Although personal jurisdiction is well-established with regard to WMDC, the Law Firm has made considerably fewer contacts with Virginia. "As a general rule, each defendant's contacts with a forum state must be assessed individually." *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 527 (E.D. Va. 2009) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). The mere fact that its client — WMDC — made sufficient contact with Virginia to exercise personal jurisdiction does not necessarily subject the Law Firm to jurisdiction here.

The Law Firm filed the Michigan lawsuit, arguably causing tortious injury to Balsly, a Virginia resident. It also served process on Balsly in Virginia. But, the Law Firm was not involved in the domestication procedure or the garnishment of Balsly's wages, which WMDC pursued through separately retained Virginia counsel. Consequently, the Court must determine whether it may exercise personal jurisdiction over the Law Firm based solely on two contacts: (1) allegedly causing tortious injury to a Virginia resident; and (2) serving process in Virginia.

### a.   Knowingly Causing a Tort in Virginia

*Knowingly* causing a tortious injury in one state from another has been held sufficient contact to establish personal jurisdiction. *Calder*, 465 U.S. at 790 (emphasis added). Applying this rule, the Fourth Circuit has emphasized that merely causing tortious injury in the forum state

9

is not enough — the Defendant must *know* that the injury occurred in the state where personal jurisdiction is asserted. *Young*, 315 F.3d at 262 (citations omitted). In other words, a defendant must "expressly aim[] or direct[] its conduct toward the forum state." *Id.*

While the Defendants may not have known that Balsly was a Virginia resident at the time that they filed the allegedly unlawful Michigan lawsuit, they did not remain ignorant of his residency when they served him with the lawsuit in Virginia. At that point, they further pursued the litigation that may have violated the FDCPA, 15 U.S.C. § 1692i, with full awareness that their conduct could cause injury in Virginia. The Court cannot review the conduct and the subsequent injury in isolation, as the Law Firm asks the Court to do. Because the critical inquiry is whether the Law Firm knew that it would cause injury in Virginia, it is sufficient that the Law Firm knew of Balsly's status as a Virginia resident when it completed the act of causing him injury (i.e. serving him with the allegedly unlawful lawsuit). Accordingly, the Court concludes that the Law Firm subjected itself to personal jurisdiction in Virginia on this basis.

        **b.**    **Service of Process in Virginia**

Regardless of whether the allegedly tortious conduct meets the "minimum contacts" threshold, serving process in Virginia, alone, gives rise to personal jurisdiction here. The Fourth Circuit has directly addressed this issue, following the Michigan courts in concluding that a process server is an agent, giving rise to physical presence in the forum state.[10] In *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1067 (4th Cir. 1982), the Fourth Circuit held that:

> [I]f an out-of-state defendant causes abusive process to be served upon an in-state plaintiff, and the plaintiff subsequently sues the defendant in the plaintiff's state,

---

[10] While the Court has considered the arguments and authorities contained in the parties' submissions, the Court instead relies on the binding Fourth Circuit case directly on point, as it must.

the state wherein the abusive process was served, on a cause of action arising out of such abusive service of process, personal jurisdiction exists over the out-of-state defendant.

*Id.* (citing *Hamilton, Miller, Hudson & Faye Travel Corp. v. Hori*, 520 F. Supp. 67, 70 (E.D. Mich. 1981)).

In *Hori*, 520 F. Supp. at 70, the court concluded that a process server acts as an agent of the party that retained him. The court went on to explain that "[t]his is not a case, as Defendants contend, where the Court must determine whether the mere use of the United States mails to serve pleadings supports jurisdiction." *Id.* Rather, the critical nature of the contact is the defendant's physical presence in the forum state because it has an agent there — a process server. *Id.* at 69-70. Thus, hiring a process server, alone, can satisfy the "minimum contacts" threshold. *But see Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1209 (9th Cir. 2006) (holding that a French organization was not subject to personal jurisdiction in California solely as a result of it having employed U.S. Marshals to serve a French lawsuit in California).

This Court applied *Hori* in *Schleit v. Warren*, 693 F. Supp. 416 (E.D. Va. 1988), wherein jurisdiction was asserted pursuant to Virginia's long-arm statute. In *Schleit*, the "narrow issue before the Court [was] whether a party's service of abusive process confers jurisdiction over that party in the forum where process is served under Va. Code § 8.01-328.1(A)(3)."[11] *Id.* at 418. Delving deeper into the issue than *Vishay* or *Hori*, both of which assumed an agency relationship between defendants and the process servers, the Court in *Schleit* applied Virginia agency law to determine whether this was the case. The Court concluded that process servers are, in fact,

---

[11] The particular provision of Virginia's long-arm statute is irrelevant to the analysis herein. As the Court has already explained, *supra* at note 2, Virginia's long-arm statute is construed to extend jurisdiction to the extent of its constitutional limits, so the two inquiries "merge" into the single question of whether "minimum contacts" exist. *CFA Inst.*, 551 F.3d at 293.

agents of those who hire them, particularly because their principals control who they serve, instruct them in which jurisdiction they are to serve process, and provide them the documents to serve. *Id.* at 420. The Court then explained that this amounts to physical presence by the principal (*i.e.*, the defendant) in Virginia through their agent (*i.e.*, the process server). It did not matter that the defendants committed the allegedly tortious actions outside of Virginia. *Id.* at 421 (rejecting defendants' argument that "no 'act' occurred within Virginia, since they were outside the state when employment of the process server occurred"); *see also Simon v. United States*, 644 F.2d 490, 497 (5th Cir. 1981) (finding jurisdiction over a Georgia defendant in Louisiana because the defendant wrongfully induced the issuance of a bench warrant against the plaintiff in Louisiana).

Relevant to the issue now before the Court, the "minimum contacts" analysis in *Hori*, 520 F. Supp. at 69, focused explicitly on "whether Defendants purposely availed themselves of Michigan privileges when they have utilized a Michigan Sheriff to serve process." The contact of significance involved hiring an agent (*i.e.*, a process-server) to take action in furtherance of an intentional tort. Critically, the defendant is deemed to have been physically present in the forum vis-à-vis its agent — the process server. Applying this reasoning to the case now before the Court, the Law Firm (and WMDC) was physically present in Virginia when it hired a process server and instructed him to serve Balsly with the Michigan lawsuit at his place of employment in Newport News, Virginia. Thus, the Court may properly exercise personal jurisdiction over the Law Firm.

Regardless of whether the tort was committed negligently or intentionally, the contact is sufficient if the contact "relates to" the tort. *Burger King*, 471 U.S. at 473. Serving process is a necessary corollary to filing the lawsuit in a forbidden forum in violation of the FDCPA, 15

12

U.S.C. § 1692i. Thus, the contact "aris[es] under" or "relate[s] to" the tortious activity, and so the distinction between an abuse of process claim and an FDCPA claim is of no consequence. *Burger King*, 471 U.S. at 473. The process server's actions in Virginia furthered the tortious out-of-state acts of the Law Firm.

The Defendants' arguments to the contrary are unconvincing. Specifically, the Defendants emphasize the notion that a process server is not a "debt collector" under the FDCPA. (Def.'s Reply at 6.) They also emphasize the legality of serving process. (*Id.*) Both arguments miss the point. The "innocent" nature of the process servers does not "serve to insulate the defendant from long-arm jurisdiction." *Schleit*, 693 F. Supp. at 422 (citing *Simon*, 644 F.2d at 499). The relevant inquiry is not where the tort occurred, as most of the tortious actions in cases like *Schleit* occur outside of the forum. It is the physical presence of the defendant's agent in the form of a process server, coupled with the out-of-state tortious conduct, that renders a defendant subject to personal jurisdiction. And that is exactly what the Law Firm did when it filed a lawsuit in Michigan (allegedly violating the FDCPA) and then retained a private process server to serve the suit on Balsly in Virginia. Thus, the Law Firm's conduct subjects it to personal jurisdiction in this forum.[12]

Having elected to sue a Virginia resident in Michigan based on a transaction that occurred in Virginia and then having employed a process server in Virginia to serve Balsly with the lawsuit, the Law Firm may not now escape the reach of this Court. *See Conn v. Zakharov,* __

---

[12] Significantly, it was the attorneys, and not their client, who were defendants in *Schleit*. 693 F. Supp. at 420 ("it is [] consistent to hold an attorney liable for torts which originate with the attorney and are technically completed by service of process"). However, the extensive discussion of the law of agency in that case did not address who was the principal — the attorneys, the client, or the law firm. But here, the Court does not need to delve into this issue because the Defendants have specifically admitted that "[t]he Law Firm [] hired a process server in Virginia to serve the [Michigan] Complaint on Balsly." (Def.'s Mem. at 2.) Plaintiff has not contested this fact.

F.3d __, 2012 U.S. App. LEXIS 607, at * 5(6th Cir. Jan. 12, 2012) ("The Court's jurisdiction . . .
extends only to those parties who have in some fashion placed themselves in the hands of the
tribunal"). The Law Firm had every reason to believe that its actions could subject it to personal
jurisdiction in Virginia; therefore, the Court will deny the Law Firm's Motion to Dismiss for
Lack of Personal Jurisdiction.

### 3.     Bratschie and Born-Fischer

As with the Law Firm, Bratschie and Born-Fischer's contacts with Virginia must be
separately assessed. *Calder*, 465 U.S. at 790. Also, because they are employees and corporate
officers of the Law Firm, "their contacts with [Virginia] are not to be judged according to their
employer's activities there." *Id.* At the same time, "their status as employees does not somehow
insulate them from jurisdiction." *Id.* Stated differently, the analysis turns not on their status as
employees, but on each employee's own conduct directed toward the forum.

Both Bratschie and Born-Fischer are counsel in the Michigan lawsuit that was served on
Balsly here in Virginia. (Def.'s Mem. at Ex. E.) The Court may reasonably infer that it was
their decision as counsel (or that of subordinates for whom they are responsible) to retain an
agent in Virginia to serve process on behalf of the client (WMDC). Indeed, the Law Firm acted
through them in this regard, and is itself subject to personal jurisdiction here as a direct result of
the actions of the attorneys it employs.

Even if either attorney was directly responsible for hiring the process server, the evidence
shows that the process server was retained on behalf of the Law Firm, not either of the attorneys
personally. (Def.'s Mem. at 2.) Without an agent in Virginia, Bratchie and Born-Fischer
established no physical presence of their own in the forum, and so they have not "purposefully
availed" themselves to the privilege of conducting activities in Virginia, as the Law Firm has.

For these reasons, the Motion to Dismiss for Lack of Personal Jurisdiction will be granted as to Bratschie and Born-Fischer.

### 4. Exercise of Jurisdiction Must Be Constitutionally Reasonable

The reasoning of *Hori* focuses on whether the defendant "purposefully availed" itself of the forum state's protection and whether the conduct "relates to" the cause of action, thus satisfying the first two "minimum contact" requirements. *Mitrano*, 377 F.3d at 407. However, those cases give little attention to the third factor, which requires the Court to ask whether its exercise of jurisdiction is "constitutionally reasonable." *Id.* Accordingly, the Court proceeds to answer this question separately from its discussion of *Hori* and its progeny.

The touchstone of this "somewhat nebulous concept," *Christian Sci. Bd. of Dirs.*, 259 F.3d at 218, is whether the exercise of jurisdiction over a defendant comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The standard has been explained as follows:

> In determining whether jurisdiction is constitutionally reasonable, we may evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."

*Christian Sci. Bd. of Dirs.*, 259 F.3d at 218 (citing *Burger King*, 471 U.S. at 477).

The first of these factors weighs in favor of the Defendants. Certainly, forcing them to adjudicate this dispute in Virginia will be inconvenient. None of the Defendants reside in Virginia or otherwise maintain a permanent presence here. But all other factors weigh heavily against the Defendants, so this lone factor cannot control the analysis.

Instead, the paramount issue here is the nature of the Defendants' alleged tort. Pursuant to the FDCPA, 15 U.S.C. § 1692i, the very act of filing a lawsuit in Michigan against Balsly, a

15

Virginia resident, violated federal law. By including such a provision, Congress expressed a public policy of preventing creditors from subjecting debtors to suit in inconvenient jurisdictions that have no connection to the specific creditor-debtor relationship. Congress saw such unilateral choice of venue by debt collectors as an abusive practice, which it forbade to protect the debtor. *See* 15 U.S.C. § 1692(e). This legislatively enacted goal would be frustrated if, in enforcing his rights, Balsly was required to subject himself to the very jurisdiction that Congress determined was inconvenient and unfair to him as a debtor. Thus, the "plaintiff's interest in obtaining convenient and effective relief" is of paramount importance in this context, arguably controlling the issue by itself. *Christian Sci. Bd. of Dirs.*, 259 F.3d at 218 (citations omitted).

But Balsly's interests are not the only variables weighing in favor of constitutional reasonableness. The interstate judicial system, Virginia, and the several states all likewise have an interest in ensuring that the remedial purposes of federal statutes are given effect by the procedural framework of the state and federal judiciary. As already explained, the remedial purpose here is to protect the debtor from inconvenience. Such interests weigh in favor of finding the exercise of jurisdiction to be reasonable in this case. *Id.*

It is also significant that the Defendants knew that their actions brought them into contact with Virginia. Although the Defendants might plead ignorance as of the time that they initially filed the Michigan lawsuit, they eventually learned that they had filed the suit against a Virginia resident. They then actively pursued the litigation regardless of the later-acquired knowledge, serving Balsly with process in Virginia (and in WMDC's case, domesticating the judgment and garnishing wages in Virginia). At that point, they knew that they had sued a Virginia resident in Michigan, giving rise to the FDCPA claim alleged herein. Thus, it was "foreseeable" that their actions in Michigan would have an impact in Virginia, "such that [they] should reasonably

16

anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In sum, WMDC and the Law Firm "purposefully availed" themselves of the privilege of conducting activities in Virginia, those activities "relate to" or "arise under" the cause of action, and it is constitutionally reasonable for this Court to exercise jurisdiction over them. However, it cannot be said that the individual Defendants (Bratschie and Born-Fischer) purposefully availed themselves of the privilege of conducting activities in Virginia. Thus, the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction will be GRANTED as to Bratschie and Born-Fischer, but DENIED as to WMDC and the Law Firm.

### III. ABSTENTION

Both as an alternative form of relief in its Motion to Dismiss (ECF No. 4) and as a separate Motion to Stay (ECF No. 8), the Defendants ask this Court to exercise its discretionary power to abstain pending decision from the Michigan court pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Although he initially asserted two causes of action, Balsly now agrees to dismiss the claim alleging that the Michigan suit was knowingly filed after expiration of the limitation period in violation of the FDCPA, 15 U.S.C. § 1692f.[13] (Pl.'s Opp'n at 1 n.1; Pl.'s Mem. Opp'n Def.'s Mot. to Stay ("Pl.'s Stay Opp'n") at 2.)

**A.    Standard of Review**

"[T]he rule is well recognized that the pendency of an action in the state system is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Chase*

---

[13] Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), a plaintiff has a right to unilaterally dismiss an action, without prejudice, if the defendant has not yet filed an answer. Here, the Plaintiff withdrew the statute of limitations count in his briefs on December 13, 2011. The Defendants did not file their Answer until January 13, 2012. Thus, the Plaintiff had a right to withdraw the claim, without prejudice, and the Court shall address the pending motions based on the sole remaining count.

*Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005) (internal quotations and citations omitted). Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817, they may abstain if there are (1) parallel proceedings and (2) exceptional circumstances warranting abstention. *Id.* at 818.

In such a case, the Court's principal task "is not to find some substantial reason for the exercise of jurisdiction by the district court; rather, our task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' . . . to justify the surrender of that jurisdiction." *Chase Brexton Health Servs.*, 411 F.3d at 463 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)). The decision to abstain is within the sound discretion of the trial court. *New Beckley Mining Corp. v. Int'l Union*, 946 F.2d 1072, 1074 (4th Cir. 1991). Moreover, all factors need not be present for a court to decide the issue one way or the other, as the factors should be applied "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 21.

**B.   Discussion**

The Michigan proceeding is not parallel with the case before the Court, and there are not "exceptional circumstances" warranting abstention. *Colorado River*, 424 U.S. at 813. "[A]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* Overall, the factors to be considered in the analysis weigh against abstention. Thus, the Court will not grant the discretionary relief sought, finding that there is not "the clearest of justifications" required to do so. *Chase Brexton Health Servs.*, 411 F.3d at 463 (citation and internal quotation marks omitted).

18

### 1.   Parallel Proceedings

Two cases are parallel "if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp.*, 946 F.2d at 1073. Balsly makes a bold claim that "the cases on this point uniformly hold that it is inappropriate [to] refuse to exercise jurisdiction over FDCPA venue claims." (Pl.'s Stay Opp'n at 4.) Yet, he does not cite a single case for such a bright-line rule, which runs counter to the guidance disfavoring bright-line rules. *Moses H. Cone*, 460 U.S. at 21 (explaining that abstention should be considered "in a pragmatic, flexible manner with a view to the realities of the case at hand") Moreover, the Defendants have identified two FDCPA cases that were subject to abstention. For example, in *Stampley v. LVNV Funding, LLC*, 583 F. Supp. 2d 960, 963-65 (N.D. Ill. 2008), a district court stayed an FDCPA claim on abstention grounds, finding that parallel proceedings existed and that the factors weighed heavily in favor of abstention given the circumstances of those cases. *Accord St. Clair v. Wertzberger*, 637 F. Supp. 2d 251, 255 (D.N.J. 2009). Thus, there is no bright-line rule counseling either in favor or against finding the cases to be parallel.

Here, both WMDC and Balsly are parties to the Michigan action, but the Law Firm and its attorneys are not parties — they are counsel of record. That fact is not dispositive of the issue, as complete identity between suits is not required. *Jackson Hewitt, Inc. v. J2Fin. Servs., Inc.*, 901 F. Supp. 1061, 1066 (E.D. Va. 1995) ("[F]ederal and state cases may be parallel despite the fact that the cases are not currently mirror images"). At the same time, the Court is concerned that Balsly could not assert his claims against the Law Firm and its attorneys in the Michigan case without creating a conflict of interest that might disqualify them as counsel. *See* VSB Rule 1.7(a)(2) ("[T]here is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer"). Divergent interests of this

19

type tend to suggest that, although *some* of the parties are the same, the *interests* of those parties in the two different cases are not parallel. And although he may have rights against such parties, it would frustrate judicial efficiency were he to bring such claims in a manner that might set-back a case that has now been pending for nearly one and a half years.

There are also similar, but not identical, factual issues in the two cases. The Michigan case arises out of the same consumer credit transaction involving Balsly, which WMDC accepted under assignment. But, Balsly does not assert any counterclaims against WMDC in the Michigan case. Balsly's affirmative defense of statute of limitations forms the basis for one of his two claims before this Court, though he has voluntarily withdrawn that claim without prejudice so that the Michigan court may decide that issue. Thus, the sole cause of action before this Court alleges that Defendants brought suit in a forbidden jurisdiction in violation of the FDCPA. This claim is *not* before the Michigan court.

Because Balsly asserts no claims in the Michigan case, there are very different remedies for Balsly here than are available to him in the Michigan case. In Michigan, he defends himself as debtor against a creditor seeking to enforce a credit agreement. As a defendant in that case, Balsly asserts affirmative defenses, which might relieve him of liability, but will not entitle him to damages. Here, pursuant to the FDCPA, Balsly seeks affirmative relief for claims that would entitle him to statutory damages, actual damages, and attorney's fees — none of which are available to him in the Michigan lawsuit. 15 U.S.C. § 1692(a). Moreover, he is entitled to a trial by jury here, which may not be available to him in the Michigan case. (Pl.'s Stay Opp'n at 4.)

The case of *Alfa Laval, Inc. v. Travelers Cas. and Sur. Co.*, is instructive on this issue. No. 3:09cv733, 2010 U.S. Dist. LEXIS 10120, at *7 (E.D. Va. Feb. 5, 2010). In that case, Judge Hudson held that two cases were not parallel regardless of the fact that both cases were litigating

20

the same core issues. *Id.* at \*6-7. Because the remedies were different between the two suits, and because only one of the cases would be tried by a jury, "[s]uch differences in remedies and availability of a jury are significant and counsel against a finding of parallel actions." *Id.* (citing *New Beckley Mining Corp.*, 946 F.2d at 1074).

Likewise, the Michigan cases are similar but not "parallel proceedings," because the cases litigate different interests between slightly different parties, the remedies sought are different, and only the case here will be tried by a jury. Accordingly, the Court concludes that it need not proceed to evaluate the "exceptional circumstances." Nevertheless, given the discretionary nature of the relief sought, it will do so because the Court finds that those factors also weigh against the discretionary relief sought.

## 2. Exceptional Circumstances

To determine whether abstention is proper, the Court must consider the following six non-exclusive factors:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.[14]

---

[14] The Defendants include a seventh factor, "whether the later-filed lawsuit is reactive or vexatious." (Def.'s Mem. in Sup. Def.'s Mot. to Stay ("Def.'s Stay Mem.") at 5.) In doing so, they cite the case of *Moses H. Cone*, which does not specifically list this as a separate, seventh factor. *See Moses H. Cone*, 460 U.S. at 15-16. Rather, the Court in *Moses H. Cone* acknowledged that the "vexatious or reactive nature" of either lawsuit may reasonably influence the analysis, while refraining from specifically relying upon such a variable. And contrary to the implications of the Defendants' discussion of the "vexatious or reactive" factor, it was *never* raised in the seminal case of *Colorado River*. On one occassion, the Fourth Circuit discussed the "reactive or vexatious nature" of a lawsuit as part of the fourth factor, which concerns the order in which the suits were filed. *Gannett Co. v. Clark Constr. Group, Inc.*, 286 F.3d 737, 747-48 (4th Cir. 2002). Thus, the Court considers the "reactive or vexatious" nature of the federal suit not as an independent factor, but as part of the fourth factor.

*Chase Brexton Health Servs.*, 411 F.3d at 463-64 (citing *Moses H. Cone*, 460 U.S. at 15).

### a.   Factors One and Three are Neutral in this Case

First, the Court notes that two of these factors have no impact on the outcome of the abstention analysis. Factor one implicates *in rem* jurisdiction, and the Defendants concede that there is no such issue here. (Def.'s Mem. at 18.)

Factor three directs the Court to consider the impact of piecemeal litigation. Contrary to the Defendants' argument on this point, "piecemeal litigation" is inevitable in this case, because Balsly has not asserted his claim in the Michigan case. Pursuant to the FDCPA, Balsly has a right to pursue his claim regardless of whether he is found liable on the debt in the Michigan proceeding — the two rights are not coterminous. *Vitullo v. Mancini*, 684 F. Supp. 2d 760, 766-67 (E.D. Va. 2010) ("[T]he FDCPA does not permit private litigants to seek injunctive or declaratory relief that has the effect of cancelling or extinguishing a debt . . . [i]nstead, these litigants are limited to the damages provided [by statute]"). Thus, a stay will not avoid piecemeal litigation.

The Defendants are also incorrect that the parties would litigate damages twice if both claims proceed. (Def.'s Reply in Sup. Mot. to Stay ("Def.'s Stay Reply") at 4.) As the Court has already explained, *supra* at Section III(B)(1), the action in Michigan concerns the damages owed by Balsly as debtor to WMDC as creditor. Here, Balsly seeks damages for the Defendants' violation of the FDCPA. Thus, the basis of the damages and the nature of the claims are distinct.

Assuming that the Michigan court renders a decision on the merits before this Court renders judgment, that would not implicate *res judicata* "claim preclusion." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Rather, it would only raise issues of *res judicata* "issue preclusion." *Id.* The Supreme Court has explained the distinction between the two doctrines as follows:

22

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim. By preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Id.* (citations and internal quotation marks omitted) (alterations in original). But if such "issue preclusion" results from factual rulings of the Michigan court, this Court will then be required to decide whether the doctrine applies. The application of the doctrine has not been briefed by the parties, and would need to be addressed in a motion for summary judgment *regardless of the outcome in Michigan*. Therefore, the case before this Court will necessarily proceed at some level regardless of the outcome of the Michigan case, because application of the doctrine itself may yet be challenged.

This distinction between the two varieties of *res judicata* demonstrates that Defendants' reliance on *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332 (4th Cir. 2002), is misplaced. In that case, the Fourth Circuit found that the district court had abused its discretion when it denied relief based on the abstention doctrine. This was because the very same arbitration award that was subject to suit in a state court was being challenged in a federal case. Because the nature of the basis for relief was "the same arbitration award" in the two cases, the "harmonious relationship between the states and federal government" would be in jeopardy if different outcomes resulted. *Id.* at 340. The critical issue was that "two competing parallel actions [sought] to *apply the same law*." *Id.* (emphasis added). Here, the Michigan court will apply

state contract law principles, while the case before this Court implicates distinct federal statutory rights.

Although the third factor is arguably the most important, *Holland v. Hay*, 840 F. Supp. 1091, 1101 (E.D. Va. 1994), it cuts both ways in this case. A stay might permit the Court to adjudicate some factual issues by applying *res judicata* "issue preclusion," but it will not bar Balsly's case entirely under "claim preclusion." So, it neither favors nor disfavors abstention here. Even if Balsly loses in the Michigan action to collect a debt from him, he is entitled to separately enforce any claims he might have under the FDCPA. Thus, this case will proceed on some level regardless of the outcome in the Michigan court.

### b.     The Second Factor Favors Abstention

The second factor asks whether the federal forum is convenient. *Chase Brexton Health Servs.*, 411 F.3d at 463-64 (citing *Moses H. Cone*, 460 U.S. at 15). At the outset, the Court notes that the convenience to Bratschie and Born-Fischer is no longer at issue, given the Court's personal jurisdiction ruling, *supra* at Section II. They may, however, be witnesses should the matter proceed to trial. The court in Michigan is nearly six-hundred miles from this courthouse. Given the fact that most of the witnesses appear to be located in Michigan, the lack of convenience between the two forums tends to favor abstention. *See, e.g., Rogers v. Dow Agrosciences, LLC*, No. 4:06cv15, 2006 U.S. Dist. LEXIS 74881, at *21-22 (W.D. Va. Oct. 16, 2006) (emphasizing the geographical distance between the forums in considering factor two).

However, to the extent that the litigation is inconvenient to WMDC or the Law Firm, the Court cannot completely ignore the inconvenience to the debtor — Balsly. Indeed, the legislative goal of the FDCPA, 15 U.S.C. § 1692i, is to ensure convenience to the debtor — not

24

forum shopping by the creditor. Thus, little emphasis should be placed on this factor, even if it tends to weigh in favor of abstention.

### c. The Remaining Factors Weigh Against Abstention

Other than factor six, none of the discretionary factors weigh in favor of abstention. Thus, because there must be "the clearest of justifications" for this Court to abstain from exercising jurisdiction, it will not exercise its discretion to do so. *Chase Brexton Health Servs.*, 411 F.3d at 463 (citation and internal quotation marks omitted). Indeed, it appears that it would be an abuse of discretion to abstain, given the one-sided nature of the analysis.

#### i. Factor Four

Contrary to the Defendants' argument, the fourth factor weighs against abstention, if only slightly. It is true that the Michigan lawsuit was filed before the federal action herein, such that the lawsuit here is "reactive." *Gannett Co.*, 286 F.3d at 748. Of course, it is necessarily "reactive" since the FDCPA cause of action arises only after a debt collector files suit in a forbidden forum. 15 U.S.C. § 1692i.

But sequence is not enough, because "the order of filing should be viewed pragmatically, meaning that 'priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Gannett Co.*, 286 F.3d at 747-48. The Michigan action was filed on October 1, 2010, and it took over one year for the jurisdictional and default judgment issues to be resolved. (Def.'s Mem. Ex. D.) Also, the parties have not indicated whether, and when, a date has been established for trial in that case. In contrast, the case before this Court was filed on September 27, 2011, a mere five months ago, and the Court has set the matter for trial on June 5, 2012. Because the parties have not provided a trial date for the Michigan case, the Court can only speculate as to how quickly that case might

25

reach a resolution. Here, however, the Court has provided a date certain for trial and done so in less time than the Michigan court has resolved jurisdiction. It appearing that the case before this Court is proceeding more expeditiously, factor four weighs against abstention, regardless of the fact that the Michigan case was filed first.

### ii.    Factor Five

The fifth factor, which asks whether federal law is implicated, weighs heavily against abstention. The Michigan court will address issues of state law, but Balsly's claims here arise exclusively pursuant to federal statute — the FDCPA. The Defendants argue that the fifth factor favors abstention, because the Michigan case will completely dispose of this matter, presumably mooting any questions of federal law. (Def.'s Stay Mem. at 8.) However, as the Court has already explained in distinguishing between the two doctrines of *res judicata*, *supra* at Section III(B)(2)(a), Balsly's claims are likely to proceed in this Court regardless of the outcome in Michigan. Thus, the Defendants' conclusory arguments on this point are unconvincing, and the fifth factor weighs against abstention.

### iii.    Factor Six

The Defendants are incorrect that factor six favors abstention. According to this factor, the Court must consider whether the Michigan court can adequately protect Balsly's rights, at least to the extent that such rights will be adjudicated therein. *Chase Brexton Health Servs.*, 411 F.3d at 463-64 (citing *Moses H. Cone*, 460 U.S. at 15). While the Michigan court is capable of adjudicating any *defenses* to the underlying debt, it cannot adjudicate the federal rights that Balsly might have, because he has not raised those claims as a counterclaim. In *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 209 (4th Cir. 2006), the Fourth Circuit found that abstention was inappropriate in a case where the state law of Alabama applied in a parallel state court

26

proceeding, but Virginia law applied in the federal proceeding.  Here, the Michigan court will apply state law, but this Court will address exclusively issues of federal statute.  Thus, it cannot be said that the Michigan court can adequately protect Balsly's rights, since his FDCPA rights are not even addressed in that litigation.

In each of the cases cited by the Defendants on this issue, "the presence of state law issues" was said to weigh in favor of abstention.  (Def.'s Stay Mem. at 8.)  *See Jacobson v. City of Chicago*, 233 F. Supp. 2d 1001, 1008 (N.D. Ill. 2002) (presence of exclusive state law claims favored abstention); *Kawecki ex rel. Marlowe v. County of Macomb*, 367 F. Supp. 2d 1137, 1149 (E.D. Mich. 2005) ("Simply put, state court procedures exist for looking into the matters of which Plaintiff complains, and nothing in the record suggests that these procedures might prove inadequate"); *Lisa, S.A. v. Mayorga*, 232 F. Supp. 2d 1325, 1328 (S.D. Fla. 2002).  But because Balsly has withdrawn his statute of limitations claim, there are no longer state law issues before this Court.  Accordingly, the sixth factor weighs against abstention.

With all the factors considered, especially given the extraordinary nature of abstention, the Court will deny the Defendants' Motion to Stay.

## IV. CONCLUSION

For the reasons discussed herein, the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Dismiss or Stay on Abstention Grounds (ECF No. 4) will be GRANTED, in part, and DENIED, in part.  Defendants Bratschie and Born-Fischer are DISMISSED, but the Law Firm and WMDC are not.  The Motion to Stay on Abstention Grounds (ECF No. 8) is DENIED.

An appropriate Order shall issue.

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: February 27, 2012